UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| VICTORIA MURNANE and MELISSA DAVIS,<br><br>Plaintiffs,<br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; SHERIFF DOUGLAS GILLESPIE, and JOHN NORMAN,<br><br>Defendants. | Case No. 2:13-cv-1088-MMD-PAL<br><br>ORDER<br><br>(Def.'s Motion to Dismiss – dkt. no.18; Def.'s Motion to Sever – dkt. no. 19) |

## I. SUMMARY

Before the Court is Defendant Las Vegas Metropolitan Police Department's ("LVMPD") Motion to Dismiss (dkt. no. 18) and Motion to Sever Plaintiffs' Claims (dkt. no. 19). The Court has also considered Plaintiffs Victoria Murnane ("Murnane") and Melissa Davis' ("Davis")(collectively "Plaintiffs") oppositions and LVMPD's reply. For the reasons discussed below, the Motion to Dismiss is granted and the Motion to Sever is denied as moot.

## II. BACKGROUND

This case arises out of alleged sexual harassment committed by an officer under color of law. Plaintiffs allege the following facts:

Defendant Officer John Norman ("Norman"), while employed by Defendant LVMPD, engaged in a series of inappropriate contact with women, pulling them over without any legal basis, and coercing them to move and/or remove their bras exposing their breasts. During at least one traffic stop, Norman groped a woman's breast.

Specifically, on June 23, 2011, Norman stopped Rebecca Portilla[1] for admittedly no legitimate reason. (Dkt. no. 15 at ¶ 22-24.) Norman conducted a physical pat-down of Ms. Portilla and made her put her fingers under her bra and shake it three times unnecessarily. (*Id.* at ¶ 25-27.) Norman taunted Ms. Portilla, commenting on her "shyness" and only allowed her to leave once she exposed her breast. (*Id.* at ¶ 28, 31-32.) Then, on August 19, 2011, Norman similarly stopped Plaintiff Davis. (*Id.* at ¶ 36.) Norman asked Davis to pull down her shirt under the pretense that women are known to hide drugs under their breasts. (*Id.* at ¶ 39.) When Davis protested and requested a female officer, Norman told Davis a female police officer was unnecessary because Norman was not going to touch her. (*Id.* at ¶ 41.) However, Norman coerced Davis to remove or manipulate her bra. (*Id.* at ¶ 42.) Again, on December 11, 2011, Norman stopped Plaintiff Murnane and instructed her to move her car to a dark parking lot. (*Id.* at ¶ 47.) Norman asked Murnane to step out of her vehicle and then physically searched her. (*Id.* at ¶ 51.) Similar to the other two women, Norman asked Murnane to remove or manipulate her bra and then proceeded to grope her breasts. (*Id.* at ¶ 52-53.)

Murnane reported the conduct to LVMPD. (*Id.* at ¶ 56.) On February 1, 2012, Norman was arrested on felony charges of coercion and oppression under the color of office and misdemeanor open or gross lewdness. (*Id.* at ¶ 57.) Despite this, LVMPD did not terminate Norman but rather allowed him to voluntarily resign on June 13, 2012. (*Id.* at ¶ 58.) On June 25, 2012, Norman entered into a plea agreement and pled guilty to one count of Oppression Under Color of Office (Gross Misdemeanor) and one count of Open or Gross Lewdness (Gross Misdemeanor) for his actions against Davis and Murnane. (*Id.* at ¶ 59.)

Plaintiffs allege that LVMPD "does not have an adequate sexual harassment prevention policy and does not adequately train its officers to refrain from sexual harassment and to treat women of the public appropriately and refrain from sexually

---

[1] Ms. Portilla is not a party to this action.

abusing them. Nor does Defendant LVMD adequately train officers in the proper use of force, the proper scope of detentions, and the limits of their authority. Further, Defendant LVMPD does not adequately discipline officers and officials who engage in sexual harassment and do not treat women of the public appropriately and/or sexually abuse women. . . . [O]fficers who commit wrongdoing are able to evade meaningful accountability for their actions, and there is a culture at Defendant LVMPD that its officers are above the law." (*Id.*) To support these contentions, Plaintiffs point to the actions of another LVMPD Officer, Solomon Coleman, who "recently brought to answer charges that he developed a pattern of starting 'relationships' with women [he] met at crime scenes and on routine calls, using his authority as a member of Defendant LVMPD to gain and abuse the trust of at least five women." (*Id.* at ¶ 63.)

On June 19, 2013, Plaintiffs filed this lawsuit. LVMPD moved to dismiss the Complaint. Pursuant to the parties' stipulation, Plaintiffs filed their First Amended Complaint ("FAC") alleging: (1) excessive force against all Defendants, (2) equal protection violations against all Defendants, (3) unreasonable search and seizure against all Defendants, (4) substantive due process violations against all Defendants, (5) negligent supervision against LVMPD and Sheriff Gillespie, (6) battery against Norman and LVMPD, (7) assault against Norman and LVMPD, (8) intentional infliction of emotional distress against Norman and LVMPD, (9) negligent infliction of emotional distress against Norman and LVMPD, (10) negligence against all Defendants, and (11) false imprisonment against Norman. LVMPD and Sheriff Gillespie now move to dismiss the claims against them for failure to state a claim, and to sever Murnane and Davis' claims.

### III.  LEGAL STANDARD

On a 12(b)(6) motion, the court must determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (citation and internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment." Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**IV.  DISCUSSION**

42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). The Complaint seeks relief from LVMPD based on municipal liability, and Sheriff Gillespie based on supervisory liability.

### A. *Monell* Claims Against LVMPD

A plaintiff seeking to establish § 1983 municipal liability must show that the deprivation of the federal right was attributable to the enforcement of a municipal custom or policy. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Thus, although a municipality is subject to § 1983 liability, it cannot be subject to liability on the basis of *respondeat superior*. *Id.* at 691.

A *Monell* municipal liability claim may be based on: (1) an express municipal policy; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"; or (3) the decision of a person with "final policymaking authority." *Id.* at 690; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Additionally, the plaintiff must show a direct causal link between the policy or custom and the constitutional deprivation. *Canton v. Harris*, 489 U.S. 378, 385 (1989). Courts have recognized several policies and practices that give rise to *Monell* liability, including deliberately indifferent training or supervision, deliberately indifferent discipline, and deliberately indifferent failure to adopt policies necessary to prevent constitutional violations. *Canton*, 489 U.S. at 380 (training and supervision); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010) (discipline); *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (policies).

#### i. Inadequate Training and Supervision

*Monell* liability for failure to train an employee may only attach when the failure to train or supervise amounts to deliberate indifference to the rights of persons with whom the employee comes into contact. *Canton*, 489 U.S. at 388. Further, *Monell* liability for or failure to supervise attaches only upon knowledge of the inappropriate, constitutional

///

5

violations. *See Plumeau v. Yamhill County Sch. Dist. No. 40*, 907 F.Supp. 1423, 1440 (D.Or. 1995), *aff'd* 130 F.3d 432 (9th Cir. 1997).

The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy. *Canton*, 489 U.S. at 390. Thus, to prevail under this theory, the plaintiff must demonstrate specific training deficiencies and either (1) a pattern of constitutional violations of which policymaking officials can be charged with actual or constructive knowledge, or (2) that training that is obviously necessary to avoid constitutional violations. *Id.* at 390. Merely showing that a particular officer was inadequately trained, that there was negligent administration of an otherwise adequate program, or that the conduct could have been avoided by more or better training, is insufficient. *Id.* at 390-391.

Plaintiffs' claims against LVMPD based on a failure to train theory fail for several reasons. First, the Complaint merely avers that "LVMPD does not have an adequate sexual harassment prevention policy," "does not adequately train its officers to refrain from sexual harassment," does not "adequately train officers in the proper use of force, the proper scope of detentions, and the limits of their authority." (Dkt. no. 15, at ¶ 20.) However, Plaintiffs have not identified a specific training deficiency. Second, although Plaintiffs allege that "despite knowing of these problems," LVMPD has failed to take remedial steps, those allegations relating to knowledge are conclusory allegations not afforded the assumption of truth. Third, as Plaintiffs have not identified a specific deficiency, they also have not shown why that training is obviously necessary to avoid constitutional violations.

Finally, Plaintiffs' allegations do not allow reasonable inferences of unconstitutional customs or policies that caused Plaintiffs' harm. Plaintiffs' allegations are occasionally framed broadly to encompass general use of force and then more narrowly to sexual harassment prevention. Without some continuity and focus of the allegedly broken policy, or some additional supporting or connecting factual allegations, allegations made against different officers in different contexts are insufficient to connect

the allegedly unconstitutional custom or policy to Plaintiffs' harm. For example, even if there has been "extensive reporting on the excessive use of force by the LVMPD" as related to "officer-involved shootings" (dkt. no. 15 at ¶ 73), that evidence would not support the inference that there is a failure to train amounting to a custom or practice of allowing sexual harassment.

Moreover, Plaintiffs' claims against LVMPD based on a failure to supervise theory similarly fail. Specifically, Plaintiffs have not proffered any non-conclusory allegations that LVMPD or any supervisor had knowledge of the inappropriate, constitutional violations and failed to take action. Plaintiffs allege that only Murnane reported Norman's conduct to LVMPD, that sometime thereafter Norman was criminally charged, and LVMPD allowed Norman to resign. Without any allegations that there were earlier reports of Norman's behavior, the only reasonable inference that can be drawn from the alleged facts is that when Murnane complained, LVMPD became aware of the behavior and began an investigation that led to criminal charges and Norman's resignation. Without allegations of prior knowledge, Plaintiffs' claims under theories of failure to train and supervise must fail.

### ii. Inadequate Discipline

*Monell* liability for inadequate disciplining of a subordinate arises under a theory of ratification, such that by not disciplining the officer, the municipality ratifies the unconstitutional conduct. See *Clouthier*, 591 F.3d at 1253–54. Ratification, however, generally requires more than acquiescence. See *Sheehan v. City and County of San Francisco*, No. 11-16401, 2014 WL 667082, *15 (9th Cir. Feb. 21, 2014). A plaintiff must allege "that policymakers 'made a deliberate choice to endorse' the officers' actions" *Id.* (citing *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992)). Accordingly, a mere failure to discipline an officer in a single instance does not amount to ratification of the officer's allegedly unconstitutional actions. *Id.* (citing references omitted).

Plaintiffs' claims against LVMPD based on a failure to discipline theory fail for several reasons. First, every allegation related to this theory is conclusory and not

afforded the assumption of truth. Plaintiffs allege Sheriff Gillespie and LVMPD "explicitly or implicitly condoned" the unconstitutional acts and that some officers who have engaged in sexual harassment "have been subsequently promoted." However, these allegations do not show that LVMPD policymakers made a deliberate choice to endorse the officers' actions. In fact, to deliberately endorse an action logically the policymaker has to have awareness that it happened, and as discussed above Plaintiffs have not alleged any facts to support knowledge by LVMPD or Sheriff Gillespie. Second, even if some officers were subsequently promoted, that does not support a reasonable inference that in every case those officers had not been also disciplined. Lastly, based on the factual allegations, Murnane was the only person who reported the alleged inappropriate behavior, and subsequently, Norman was criminally charged and allowed to voluntarily resign. Therefore, the Court can only draw the reasonable inference that LVMPD policymakers were aware of the single instance reported by Murnane and Norman's voluntary resignation was a disciplinary action. Therefore, as the Court cannot draw the reasonable conclusion that LVMPD ratified Norman's actions, Plaintiffs' claims under a theory of failure to discipline must fail.

### iii. Failure to Adopt Policies

*Monell* liability for failure to adopt policies necessary to prevent constitutional violations arises when a policymaker knows of a potential constitutional violation, and affirmatively decides not to create any procedure to remedy the problem. *Oviatt*, 954 F.2d at 1477. Thus, to prevail under this theory, a plaintiff must show: (1) a final policymaker with respect to internal procedures, (2) knew of the potential for constitutional violations, and (3) affirmatively made the conscious choice to do nothing. *Id.* In that regard, the policy was one of inaction, *i.e.* to wait and see if someone would complain. *Id.*

Plaintiffs' claims against LVMPD based on this theory fail for the reasons already noted. Specifically, there are no factual allegations that a final policymaker, like Sheriff Gillespie, knew of Norman's conduct and affirmatively chose to not adopt a policy to end

the alleged sexual harassment by Norman or any LVMPD officers. Any allegations in this regard are conclusory and offer no factual allegations to show how or why the final policymaker had or should have had knowledge of the sexual harassment type violations. Accordingly, Plaintiffs' claims under this theory fail.

### B. Supervisory Liability Against Sheriff Gillespie

A supervisor may be held liable under § 1983 "when culpable action, or inaction, is directly attributed to them." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). Accordingly, the supervisor need not be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Id.* (citing references omitted). Rather, the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1206 (internal citations, quotation marks, and alterations omitted).

In addition to showing deprivation of a federally secured right, a plaintiff must also show a "causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 1207. A plaintiff may show the causal connection by showing the supervisor "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

Plaintiffs' claims against Sheriff Gillespie fail because there are no allegations as to how or why he had or should have had knowledge of the alleged constitutional injuries. Specifically, there are no factual allegations that Sheriff Gillespie knew of Norman's conduct and knowingly refused to end the alleged sexual harassment. Any allegations in this regard are conclusory. Moreover, the single fact alleged that could be construed to impart knowledge upon Sheriff Gillespie is followed by allegations that Norman was arrested and was allowed to voluntarily resign. This tends to show action,

///

rather than inaction, on the part of Sheriff Gillespie.[2] Although Plaintiffs allege another officer was "recently brought to answer charges" of sexual harassment, this fact does not support knowledge of the constitutional violations allegedly inflicted on Plaintiffs. Without some additional supporting or connecting factual allegations, *ex-post* allegations made against a different officer in a different context are insufficient to impart knowledge to Sheriff Gillespie about Officer Norman's conduct. For those reasons, Plaintiffs' claims against Sheriff Gillespie fail.

### C. Leave To Amend

As Plaintiffs have failed to allege facts to support a claim for *Monell* liability under any recognized theory against LVMPD, or a claim for supervisory liability against Sheriff Gillespie, their claims are dismissed. However, Plaintiffs could cure the noted deficiencies by providing additional factual allegations; thus, the claims are dismissed without prejudice. Accordingly, because the Court has dismissed the claims against LVMPD and Sheriff Gillespie, LVMPD and Sheriff Gillespie are not parties and have no standing to challenge Plaintiffs' bringing their claims together. For this reason, the Motion to Sever is denied as moot.

## V. CONCLUSION

It is therefore ordered that Defendant Las Vegas Metropolitan Police Department's Motion to Dismiss (dkt. no. 18) is granted. Plaintiffs may file a Second Amended Complaint curing the noted deficiencies within fourteen (14) days of this order. Failure to file an amended complaint within fourteen (14) days shall result in dismissal of the claims with prejudice.

///

///

---

[2] It is unclear whether LVMPD or Murnane informed the appropriate authorities. Therefore, it is unclear whose actions prompted the criminal prosecution. Regardless, LVMPD or Sheriff Gillespie could be the only entities whose actions prompted the voluntary resignation.

It is further ordered that Defendant Las Vegas Metropolitan Police Department's Motion to Sever Plaintiffs' Claims (dkt. no. 19) is denied as moot.

DATED THIS 17th day of March 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE