UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| VICTORIA MURNANE and MELISSA DAVIS,<br><br>Plaintiffs,<br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; SHERIFF DOUGLAS GILLESPIE; and JOHN NORMAN,<br><br>Defendants. | Case No. 2:13-cv-01088-MMD-PAL<br><br>ORDER<br><br>(Def.'s Motion to Dismiss and Motion to Sever – dkt. no. 41) |

**I.   SUMMARY**

Before the Court is Defendant Las Vegas Metropolitan Police Department's ("LVMPD") Motion to Dismiss Second Amended Complaint and to Sever Plaintiffs' Claims (dkt. no. 41). The Court has also considered Plaintiffs Victoria Murnane and Melissa Davis's opposition (dkt. nos. 50, 51) and LVMPD's reply (dkt. no. 52). For the reasons discussed below, the Motion to Dismiss and to Sever is denied in part and granted in part.

**II.   BACKGROUND**

Plaintiffs Victoria Murnane and Melissa Davis allege that their constitutional rights were violated when they were sexually harassed by an officer acting under the color of law. The Court recited a detailed factual background in an earlier Order dismissing, with leave to amend, Plaintiffs' First Amended Complaint's ("FAC") claims against LVMPD

and Gillespie. (*See* dkt. no. 37.) Plaintiffs have since filed a Second Amended Complaint ("SAC")[1] with additional factual allegations. (*See* Dkt. no. 38.)

While working as a sworn peace officer for LVMPD, Defendant John Norman engaged in a series of inappropriate encounters with at least three women, pulling them over without any legal basis, and coercing them to move or remove their bras. (Dkt. no. 38 ¶¶ 13, 34.) During at least one traffic stop, Norman groped a woman's breast. (*Id.* ¶ 34.) The first traffic stop occurred on June 23, 2011, when Norman pulled over Rebecca Portilla,[2] admittedly with no legitimate reason. (*Id.* ¶¶ 35-37.) Norman proceeded to pat down Ms. Portilla, forced her to put her fingers under her bra and shake it, taunted her, and let her leave only after she had exposed her breast. (*Id.* ¶¶ 40-42, 45-46.) Next, on August 19, 2011, Norman stopped Plaintiff Davis, asked her to pull down her shirt, refused Davis's request for a female officer to perform the search, and forced Davis to remove or manipulate her bra. (*Id.* ¶¶ 50, 53-57.) Again, on December 11, 2011, Norman stopped Plaintiff Murnane, physically searched her, coerced or forced her to remove her bra, and groped her breasts. (*Id.* ¶¶ 59, 65-67, 70.)

Murnane reported the incident to LVMPD. (*Id.* ¶ 72.) In February 2012, Norman was arrested on felony charges of coercion and oppression under the color of office and misdemeanor open or gross lewdness. (*Id.* ¶ 74.) Rather than terminating him, LVMPD allowed Norman to resign voluntarily in June 2012. (*Id.* ¶ 75.) Norman entered into a plea agreement later that month. (*Id.* ¶ 76.) In April 2013, two LVMPD officers confronted Murnane at her home about her interaction with Norman. (*Id.* at 78.)

Plaintiffs allege that LVMPD officers engaged in sexual harassment and abuse both before and after Norman's transgressions. (*Id.* ¶ 20.) For example, in April 1998,

///

---

[1] Plaintiff filed a Notice of Errata to the SAC in September 2014, after the parties briefed the present Motion. The errata corrects a minor typographical error in a factual allegation related to the traffic stop of Plaintiff Melissa Davis. (Dkt. no. 62-1 at 2.) For consistency, the Court will cite to Plaintiff's uncorrected SAC (dkt. no. 38), to which the parties refer in their briefs.

[2] Ms. Portilla is not a party to this action.

2

LVMPD Officer Michael Ramirez pleaded guilty to two counts of oppression under color of law for using the threat of arrest to force a couple to perform a sex act in front of him. (*Id.* ¶ 22.) In August 2000, LVMPD's Employment Diversity Office concluded that Gregory McCurdy, an LVMPD lieutenant at the time, had made unwanted sexual comments to two women. (*Id.* ¶¶ 23-24.) McCurdy received a 20-hour suspension; LVMPD promoted him to a captain position four months later. (*Id.* ¶¶ 24-25.) Norman harassed at least three women between June and December 2011. (*Id.* ¶¶ 35-71.) Shortly thereafter, in 2013, a grand jury indicted LVMPD Officer Solomon Coleman, after he allegedly started inappropriate relationships with women he met at crime scenes and on routine calls. (*Id.* ¶¶ 26-27.) Based on this pattern of misconduct, Plaintiffs allege that LVMPD and Defendant Sheriff Douglas Gillespie failed to implement adequate policies, training, and discipline to prevent LVMPD officers from engaging in sexual harassment and abuse. (*Id.* ¶¶ 28-32.) Plaintiffs further allege that LVMPD has a culture "that its officers are above the law and will not be held to full account for their actions." (*Id.* ¶ 33.)

Plaintiffs initiated this action in June 2013. (Dkt. no. 1.) Pursuant to a stipulation (dkt. no. 14), Plaintiffs filed the FAC in August 2013, alleging violations of their Fourth and Fourteenth Amendment rights and several state-law tort claims. (Dkt. no. 15.) LVMPD moved to sever Plaintiffs' claims, and to dismiss Plaintiffs' claims against LVMPD and Gillespie. (Dkt. nos. 18, 19.) The Court granted dismissal with leave to amend, finding that Plaintiffs had failed to include enough factual allegations to state a plausible claim for municipal or supervisory liability against LVMPD and Gillespie, respectively. (Dkt. no. 37.) The Court's dismissal mooted LVMPD's motion to sever. (*Id.*) LVMPD again seeks to dismiss the SAC's allegations against LVMPD and Gillespie. (Dkt. no. 41.) LVMPD additionally seeks to sever Plaintiffs' claims. (*Id.* at 5-6.) The Court addresses each Motion in turn.

///

///

///

## III.     MOTION TO DISMISS

LVMPD seeks to dismiss Plaintiffs' claims for municipal liability against LVMPD and for supervisory liability against Gillespie under Rule 12(b)(6), arguing that Plaintiffs have failed to state a plausible claim for relief against either Defendant.

### A.     Legal Standard

On a 12(b)(6) motion, the court must determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (citations and internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

### B.     Discussion

Plaintiffs bring their Fourth and Fourteenth Amendment claims against LVMPD and Gillespie pursuant to 42 U.S.C. § 1983, which provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443

4

U.S. 137, 144 n.3 (1979)). To state a claim under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs seek relief from LVMPD under a theory of municipal liability, and from Gillespie under a theory of supervisory liability.

### 1. *Monell* Claims Against LVMPD

A plaintiff seeking to establish § 1983 municipal liability must show that the deprivation of the federal right was attributable to the enforcement of a municipal custom or policy. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Thus, although a municipality is subject to § 1983 liability, it cannot be subject to liability on the basis of *respondeat superior*. *Id.* at 691.

A *Monell* municipal liability claim may be based on: (1) an express municipal policy; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;" or (3) the decision of a person with "final policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 127 (1988) (citations and internal quotation marks omitted); *see Monell*, 436 U.S. at 690-91. Additionally, the plaintiff must show a direct causal link between the policy or custom and the constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Courts have recognized several policies and practices that give rise to *Monell* liability, including deliberately indifferent training and supervision, deliberately indifferent discipline, and deliberately indifferent failure to adopt policies necessary to prevent constitutional violations. *See Canton*, 489 U.S. at 380 (training); *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010) (discipline); *Oviatt v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992) (policies). Accepting Plaintiffs' factual allegations as true, and drawing all inferences in Plaintiffs'

///

///

///

favor, the Court finds that the SAC states a plausible claim for *Monell* liability under, at least, a theory of deliberately indifferent discipline.[3]

The Ninth Circuit has "long recognized that a custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Hunter v. City of Sacramento*, 652 F.3d 1225, 1233-34 (9th Cir. 2011) (citation and internal quotation marks omitted); *see also Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). In *Clouthier*, the Ninth Circuit described inadequate discipline as a form of ratification by an official with final policymaking authority — by failing to discipline an officer, an official may ratify the officer's unconstitutional conduct.[4] *See Clouthier*, 591 F.3d at 1253-54. A policymaker must "approve a subordinate's decision and the basis for it before the policymaker will be deemed to have ratified the subordinate's discretionary decision." *Gillette*, 979 F.2d at 1348 (emphasis omitted). The *Clouthier* court cautioned that a claim suggesting that a municipality "could have better implemented its policies" would, without more, "amount to '*de facto respondeat superior* liability,' an avenue rejected in *Monell*." *Clouthier*, 591 F.3d at 1253-54 (quoting *Canton*, 489 U.S. at 392).

In dismissing the FAC, the Court concluded that Plaintiffs had failed to articulate factual allegations from which the Court could reasonably infer that LVMPD was deliberately indifferent in disciplining its officers. (*See* dkt. no. 37 at 7-8.) LVMPD rehashes this argument with regard to the SAC, contending that the SAC lacks "specific factual allegations of a widespread practice within LVMPD of officers pulling women over

---

[3] Because the Court finds that Plaintiffs' *Monell* claim may proceed on this basis, the Court will not address the other bases of deliberately indifferent training or supervision and deliberately indifferent policies.

[4] In *Clouthier*, the plaintiffs argued that the defendant County's failure to discipline employees involved in the alleged constitutional deprivation amounted to the County's ratification of the employees' conduct. *Clouthier*, 591 F.3d at 1253. The Ninth Circuit rejected that argument in reviewing the lower court's grant of summary judgment in the County's favor. The court noted that the plaintiffs had "not developed their argument on this point," and concluded that the plaintiffs had failed to proffer evidence beyond the "bare allegation" that the employees' supervisor did not exercise his power to impose discipline on them. *Id.* at 1253-54.

6

and groping them to satisfy the 'custom' requirement of a *Monell* claim." (Dkt. no. 41 at 11.) The Court disagrees with LVMPD's narrow view of the SAC's allegations.

In addition to Norman's alleged sexual harassment, the SAC recounts a history of sexual harassment or abuse carried out by LVMPD officers. (*See* dkt. no. 38 ¶¶ 20-27, 35-78.) Of the five such instances recited in the SAC, Plaintiffs identify two examples of potentially inadequate discipline. First, Plaintiffs allege that LVMPD lieutenant Gregory McCurdy was found to have committed sexual harassment, and was suspended for 20 hours. (*Id.* ¶ 24.) Four months later, LVMPD allegedly promoted McCurdy to a captain position. (*Id.* ¶ 25.) McCurdy's sexual harassment occurred only two years after another officer pleaded guilty to using the threat of arrest to force a couple to perform a sex act. (*Id.* ¶¶ 21-22.) Second, after Norman pleaded guilty to criminal charges arising from his interactions with Plaintiffs, LVMPD did not terminate him, but rather allowed him to voluntarily resign. (*Id.* ¶ 75.) Just one year later, in 2013, another officer was indicted for charges arising from his practice of starting relationships with women he met at crime scenes or during routine calls. (*Id.* ¶¶ 26-27.)

Taken together, these allegations support a reasonable inference that LVMPD's choice in discipline ratified a policy or custom through which officers used their power to engage in sexual harassment or abuse. These allegations additionally give rise to the inference that the ratification of this policy or custom caused Plaintiffs' constitutional deprivations. Given the early stages of these proceedings, the Court will not dismiss Plaintiffs' *Monell* claims against LVMPD.

### 2. Supervisory Liability Against Sheriff Gillespie

LVMPD additionally contends that Gillespie should be dismissed from the SAC because the allegations raised against him in his official capacity are duplicative of those against LVMPD, and because Plaintiffs fail to allege that he is liable in his individual capacity. With regard to Plaintiffs' claims against Gillespie in his official capacity, Plaintiffs acknowledge that "a court may dismiss the individual named in his official capacity as a redundant defendant." (Dkt. no. 50 at 11-12 (quoting LVMPD's Motion, dkt.

no. 41 at 11-12).) Therefore, as a threshold matter, the Court considers Plaintiffs' allegations against Gillespie in his official capacity as a suit against LVMPD. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")

"[T]o establish individual liability under 42 U.S.C. § 1983, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 676)). A supervisor may be held individually liable under § 1983 "when culpable action, or inaction, is directly attributed to them." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). Accordingly, the supervisor need not be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Id.* (citation and internal quotation marks omitted). The supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1205-06 (internal citations, quotation marks, and alterations omitted).

In addition to showing a supervisor's personal involvement in the deprivation of a constitutional right, a plaintiff must also show a "causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 1207 (citation and internal quotation marks omitted). A plaintiff may show the causal connection by showing the supervisor "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City and Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

The Court dismissed the FAC's allegations against Gillespie in his individual capacity because the FAC did not provide any factual allegations describing why or how Gillespie had knowledge of Plaintiffs' alleged constitutional deprivations. (Dkt. no. 37 at

9-10.) LVMPD contends that the SAC is similarly deficient. (Dkt. no. 41 at 12-13.) Plaintiffs argue that the SAC states a plausible claim for supervisory liability through Gillespie's ratification of Norman's conduct. (Dkt. no. 50 at 12.) For example, Plaintiffs point out the SAC's allegations that "Gillespie is aware of and has either explicitly or implicitly condoned or created a policy and practice of deliberate indifference towards the constitutional rights of women . . . and towards the constitutional rights of all members of the public to be free from [excessive force] and illegal detentions"; that he "has a policy and practice of allowing officers to violate the law with impunity and has created or failed to address a culture at the LVMPD that its officers are above the law"; and that he "has failed to adequately train LVMPD officers to refrain from engaging in police misconduct" and other abuse. (Dkt. no. 38 ¶ 12; *see also id.* ¶¶ 28, 89, 103, 116, 127 (alleging that Gillespie had actual or constructive knowledge of officers' misconduct and that, through inaction, he ratified this misconduct).)

Like the FAC, the SAC fails to state a plausible claim for individual liability against Gillespie. First, because many of these allegations are conclusory, the Court cannot accept them as true. Moreover, while the factual allegations regarding a history of misconduct at LVMPD may support a theory of municipal liability (*see supra* Part III.B.1), they do not indicate how Gillespie, in his individual capacity, caused Plaintiffs' alleged constitutional deprivations. *See Starr*, 652 F.3d at 1205-07. Indeed, aside from alleging that Gillespie has supervisory authority over LVMPD's officers, Plaintiffs have not alleged how long Gillespie has had that authority, or the extent of his involvement in past misconduct. (*See* dkt. no. 38 ¶ 11.) Plaintiffs seem to collapse municipal liability with individual liability, using the broader history of misconduct to argue that Norman's actions may be "directly attributed" to Gillespie, as opposed to another supervisor or policymaker. *Starr*, 652 F.3d at 1205. Moreover, Plaintiffs' allegations do not support a reasonable inference that Gillespie knew or should have known of Norman's behavior. *See Dubner*, 266 F.3d at 968. According to the SAC, it was only after Murnane reported Norman's actions that he was arrested. (*See* dkt. no. 38 ¶ 72-74.) Plaintiffs have not

1  offered factual allegations to suggest that Gillespie, in his individual capacity, prompted
2  that arrest or had any other involvement in Norman's behavior. *See Starr*, 652 F.3d at
3  1207. Accordingly, the Court will dismiss Plaintiffs' claims against Gillespie in his
4  individual capacity.

5  **IV.    MOTION TO SEVER**

6  Because the Court finds that Plaintiffs may proceed against LVMPD on a theory
7  of municipal liability, the Court must address whether Plaintiffs may proceed together.

8  Federal Rule of Civil Procedure 20(a) allows plaintiffs to join in a single action if
9  "they assert any right to relief jointly . . . with respect to or arising out of the same
10 transaction, occurrence, or series of transactions or occurrences," and if "any question of
11 law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). LVMPD
12 contends that Plaintiffs fail to meet Rule 20(a)'s first prong because their interactions
13 with Norman "are distinct factual events that must be analyzed and litigated separately."
14 (Dkt. no. 41 at 6.) Although misjoinder alone "is not a ground for dismissing an action," a
15 court "may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *Visendi v.*
16 *Bank of Am., N.A.*, 733 F.3d 863, 870-71 (9th Cir. 2013). District courts have discretion
17 in determining whether to drop a party. *See Rush v. Sport Chalet, Inc.*, --- F.3d ----, No.
18 12-57253, 2015 WL 872230, at *1 (9th Cir. Mar. 3, 2015) (reviewing the district court's
19 decision to sever under Rule 21 for abuse of discretion).

20 In arguing that Plaintiffs' claims arise from different transactions, LVMPD
21 emphasizes that Plaintiffs' interactions with Norman occurred at different times and that
22 distinct actions underlie each Plaintiff's allegations. (Dkt. no. 41 at 6.) LVMPD points out
23 that Norman stopped Davis in August 2011 and allegedly forced her to manipulate her
24 bra, but he stopped Murnane in December 2011 and allegedly groped her breasts. (*Id.*)
25 LVMPD further argues that Plaintiffs essentially concede that they cannot satisfy Rule 20
26 by describing these events as a "common series of transactions or occurrences," rather
27 than the "same" series of transactions. (Dkt. no. 52 at 3 (quoting dkt. no. 51 at 9).) Based
28 on the record available at this point in the proceedings, the Court disagrees.

1    First, Plaintiffs have not conceded that their claims should be severed. Rather, in pointing out Plaintiffs' statement about a "common" series of transactions or occurrences, LVMPD mischaracterizes the gist of Plaintiffs' opposition to the Motion to Sever. (*See* dkt. no. 52 at 3.) Plaintiffs simply argue that their interactions with Norman are part of the same *series* of transactions or occurrences, as opposed to a single transaction or occurrence. (Dkt. no. 51 at 7-9.) Moreover, as to the second prong of Rule 20(a), Plaintiffs' claims involve common issues of law and fact. Both Davis and Murnane contend that Defendants violated their Fourth and Fourteenth Amendment rights through claims of excessive force, equal protection, unreasonable search and seizure, and substantive due process.[5] (Dkt. no. 38 at 16-28.) Additionally, because these claims involve municipal liability (*see supra* Part III.A), they raise common questions regarding LVMPD's policies, training, and discipline in the context of sexual harassment and abuse carried out by LVMPD officers.

With regard to Rule 20's first prong, Plaintiffs have alleged injuries that arise from the same series of transactions — that is, from Norman's allegedly improper conduct in stopping women without a legal basis and sexually harassing or abusing them. As LVMPD emphasizes, Plaintiffs' encounters with Norman occurred four months apart and in different locations. (*See* dkt. no. 52 at 4.) But in both instances, Norman initiated a traffic stop, held Plaintiffs at the stop to carry out a search, and proceeded to force or coerce Plaintiffs to remove or manipulate their bras. (*See* dkt. no. 38 at 11-14.) Even in light of factual differences between the two stops — for instance, that Norman allegedly groped Murnane but not Davis — the Court finds that these factual scenarios are part of the same series of transactions or occurrences. *Cf. Coughlin v. Rogers*, 130 F.3d 1348, 1350-52 (9th Cir. 1997) (finding that a district court did not abuse its discretion in severing a case where plaintiffs alleged various delays — and not a pattern or practice of

///

---

[5] Plaintiffs also allege common state-law tort claims, including negligent supervision, assault, intentional infliction of emotional distress, negligence, and false imprisonment. (Dkt. no. 38 at 28-30, 32-35, 37-39.)

delay — in processing the plaintiffs' disparate immigration applications). Accordingly, the Court finds that severance is not warranted, at least at this point in the proceedings.[6] The Court therefore denies LVMPD's Motion to Sever (dkt. no. 41).

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of LVMPD's Motion.

It is ordered that Defendant Las Vegas Metropolitan Police Department's Motion to Dismiss and to Sever (dkt. no. 41) is denied in part and granted in part. The Court dismisses Plaintiffs' claims against Defendant Sheriff Douglas Gillespie in his individual capacity. Plaintiffs may proceed with their remaining claims for municipal liability against Defendant Las Vegas Metropolitan Police Department. The Court will not sever Plaintiffs' claims at this stage in the proceedings.

DATED THIS 30th day of March 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[6] LVMPD also argues, as an aside in its Motion and more thoroughly in its reply brief, that it will be prejudiced if Plaintiffs proceed together. (*See* dkt. no. 41 at 6; dkt. no. 52 at 5-6.) LVMPD notes that "Plaintiffs realize there is strength in numbers," arguing that a jury might be more willing to find liability if asked to consider both Plaintiffs' allegations together. (Dkt. no. 52 at 5.) But even if the Court severed this matter, each Plaintiff could testify during the other Plaintiff's trial. Additionally, although Plaintiffs responded to the prejudice issue in a footnote in their opposition brief, they have not had an opportunity to fully address the issue, given its thin treatment in LVMPD's Motion. (*See* dkt. no. 51 at 9 n.4; dkt. no. 41 at 6.) Thus, at this early stage in the proceedings, the Plaintiffs' joinder does not appear to prejudice LVMPD. Accordingly, the Court will not sever Plaintiffs' claims at this time.